IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACIFIC CENTURY INTERNATIONAL, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1057 |
| | ) | |
| JOHN DOES 1-37, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| PACIFIC CENTURY INTERNATIONAL, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1080 |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| FIRST TIME VIDEOS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1083 |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| FIRST TIME VIDEOS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1085 |
| | ) | |

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |
| | |
| HARD DRIVE PRODUCTIONS, INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 1086 |
| ) | |
| JOHN DOE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |
| | |
| PACIFIC CENTURY INTERNATIONAL, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 1088 |
| ) | |
| JOHN DOE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

These six cases were consolidated for the purpose of this court ruling on a motion to compel that is based on nearly identical circumstances in each case. (Dkt. No. 9.)[1] The subpoenas, which arose during discovery in four separate underlying cases, two pending in the Eastern District of

---

[1] All docket numbers refer to docket entries in the lead case, *Pacific Century International, Ltd. v. John Does 1-37*, No. 12 C 1057.

California, one in the Eastern District of Virginia, and one in the Southern District of Texas,[2] seek information from two internet service providers, Comcast Cable Communications, LLC ("Comcast") and Cequel III Communications II, LLC d/b/a Suddenlink Communications ("Suddenlink") (collectively "the ISPs"). (Dkt. No. 12, Ex. A.) The ISPs objected to the subpoenas (Dkt. No. 12, Ex. C), and the plaintiffs filed a motion to compel compliance (Dkt. No. 12). For the reasons stated below, the motion to compel is granted in part and denied in part. In addition, Comcast filed a motion to consolidate two additional cases with this case. (Dkt. No. 18.) That motion is denied without prejudice.

BACKGROUND

The plaintiffs in each of the six cases are producers of pornographic videos.[3] In each case, the plaintiffs allege that the John Doe defendants illegally reproduced and distributed a pornographic video in violation of the plaintiffs' copyright.[4] The defendants accessed the videos in each case from their computers through the use of a BitTorrent file sharing protocol. One other district court has previously explained that a Bit Torrent file sharing protocol is a decentralized method of distributing

---

[2] *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal.); *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal.); *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va.); *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex.).

[3] The facts are drawn from the operative complaint in the four cases underlying the six subpoenas. *See* Amended Complaint [Dkt. No. 6], *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal. Jan. 5, 2012); Amended Complaint [Dkt. No. 6], *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal. Jan. 5, 2012); Amended Complaint [Dkt. No. 3], *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va. Jan. 4, 2012); Complaint [Dkt. No. 1], *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16, 2011).

[4] In *Pacific Century International Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex.) and *Pacific Century International, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal.), the video at issue is entitled "Amateur Creampies - Laney Boggs." In *Hard Drive Productions, Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal.), the video is entitled "Amateur Allure - Dylan." In *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va.), the video is entitled "FTV - Tiffany."

data on peer-to-peer ("P2P") file sharing networks:

> Since its release approximately 10 years ago, BitTorrent has allowed users to share files anonymously with other users. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data amo[ng] themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another. In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."
>
> The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects [from] the swarm or the BitTorrent client otherwise does the same.[5]

Because the BitTorrent system allows each individual user to share information anonymously, the plaintiffs do not know the identity of each alleged defendant at this time. Instead, the plaintiffs have identified only a series of Internet Protocol ("IP") addresses assigned to computers that accessed the copyrighted material, along with the date and time of each computer user's alleged unlawful activity. In each case, the plaintiffs filed a motion for early discovery seeking leave to subpoena the ISPs to obtain the identifying information for each IP address. The respective courts in each case granted plaintiffs leave to subpoena the ISPs, (Dkt. No. 12, Ex. B),

---

[5] *MCGIP, LLC v. Does 1–30*, No. 11 C 3680, 2011 WL 3501720, at *1 (N.D. Cal. Aug. 10, 2011) (quoting *Diabolic Video Prods., Inc. v. Does 1–2099*, No. 10 C 5865, 2011 WL 3100404, at *1 (N.D. Cal. May 31, 2011)).

and the plaintiffs issued Federal Rule of Civil Procedure 45 subpoenas to each ISP calling for production at the office of the plaintiffs' law firm in Chicago. (Dkt. No. 12, Ex. A.) Accordingly, the subpoenas were issued from this court, as required by Fed. R. Civ. P. 45(a)(2)(C) (requiring that the subpoena must issue "from the court for the district where the production . . . is to be made").

## LEGAL STANDARD

Under Rule 45(c)(3), the court must quash or modify a subpoena to a non-party witness that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). When determining if a burden is undue, the court must ask whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). When making that inquiry, the court should consider "'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) (quoting *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000) (Hamilton, J.)). "The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Id.* (citation omitted).

## ANALYSIS

Copyright owners have used "John Doe" suits against unidentified defendants as a means of enforcing their copyrights in digital material for nearly a decade. *See* Ronald N. Weikers, *Data Security and Privacy Law* § 9:133 (rev. 2011).[6] Throughout the 2000s, for example, the music

---

[6] Prior to 2003, copyright owners primarily identified infringers by using a provision of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(h)(1), which allows copyright owners to issue subpoenas to ISPs to identify the IP addresses of alleged infringers even before

recording industry filed well over 10,000 John Doe lawsuits. *Id.* More recently, various movie studios have adopted the tactic in an effort to identify copyright infringers. *See, e.g.*, *Voltage Pictures, LLC v. Does 1-5,000*, No. 10 C 873, 2011 WL 1807438, at *1 (D.D.C. May 12, 2011). Producers of pornographic movies have been particularly aggressive on this front. The lawyers representing the plaintiffs in these pending cases have to date filed at least 118 such lawsuits against over 15,000 John Does in the last year and a half alone. *See* Decl. of Charles E. Piehl and Exhibit A, *AF Holdings, LLC, v. Does 1-135*, No. 11 C 3336 (N.D. Cal. Feb. 22, 2012), ECF Nos. 43, 43-1 (providing a list of cases filed by plaintiffs' law firm as of February 24, 2012).

> Another court has described the common arc of the plaintiffs' litigating tactics in those cases:
>
> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements—a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*MCGIP, LLC v. Doe*, No. 11 C 2331, 2011 WL 4352110, at *4 n.5 (N.D. Cal. Sept. 16, 2011). The Doe defendants, of course, are not without recourse, as the ISPs often must notify them and give them a chance to object to the subpoenas before the ISPs divulge their identity. *See* 47 U.S.C.

---

filing suit. *Id.* In 2003, the D.C. Circuit held that the DMCA's provision applied only when an ISP "stor[es] the infringing material on its server" and not when an ISP acts "only as a conduit for data transferred between two internet users, such as . . . sharing P2P files." *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233-35 (D.C. Cir. 2003); *accord In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771 (8th Cir. 2005); *Interscope Records v. Does 1-7*, 494 F. Supp. 2d 388 (E.D. Va. 2007). The DMCA's provision thus became inadequate for digital copyright owners attempting to identify users downloading copyrighted material on P2P networks.

§ 551(c)(2)(B) (providing that ISPs who qualify as "cable providers" may not divulge personally identifiable information of a subscriber in response to a court order unless "the subscriber is notified of such order by the person to whom the order is directed").

Many Doe defendants have appeared in various actions, raising two arguments that the subpoenas should be quashed. *See, e.g.*, *First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 255 (N.D. Ill. Aug. 16, 2011). First, the Doe defendants who reside outside the judicial district in which the action was brought contend that they are not subject to personal jurisdiction of the court. Second, the Doe defendants contend that joinder of the defendants is improper under Federal Rule of Civil Procedure 20(a)(2). Some courts have rejected those arguments,[7] but others have increasingly accepted them and severed the defendants or quashed the subpoenas.[8]

In the face of this stiffening judicial headwind, the plaintiffs here have adopted a new tactic to avoid the personal jurisdiction and joinder issues. In three of the underlying cases which prompted

---

[7] *See, e.g.*, *First Time Videos*, 276 F.R.D. at 255 (Bucklo, J.) (holding that joinder is appropriate and the court has personal jurisdiction); *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 251–52 (N.D. Ill. Aug. 9, 2011) (Castillo, J.) (denying motion to dismiss and motion to sever); *MGCIP v. Does 1–316*, No. 10 C 6677, 2011 WL 2292958 (N.D. Ill. June 9, 2011) (Kendall, J.) (denying motion to dismiss for lack of personal jurisdiction).

[8] *See, e.g.*, *Millenium TGA v. Doe*, No. 10 C 5603, 2011 WL 7444064 (N.D. Ill. Sept. 26, 2011) (Manning, J.) (dismissing case for lack of personal jurisdiction and improper venue after previous order severing all other potential defendants); *On the Cheap, LLC. v. Does 1–5011*, No. 10 C 4472, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) (severing defendants); *Digiprotect USA Corp. v. Does 1–266*, No. 10 C 8759, 2011 WL 1466073 (S.D.N.Y. Apr. 13, 2011) (denying discovery of the identities of defendants whom plaintiff had not shown to be subject to the court's jurisdiction); Order, *W. Coast Prods., Inc. v. Does, 1–2010,* No. 10 C 0093 (N.D.W.V. Dec. 16, 2010) (severing defendants and allowing amended complaints only against individuals with IP addresses in West Virginia); *CP Prods., Inc. v. Does 1–300*, No. 10 C 6255, 2011 WL 737761, at *1 (N.D. Ill. Feb. 24, 2011) (Shadur, J.) ("[T]here is no justification for dragging into an Illinois federal court, on a wholesale basis, a host of unnamed defendants over whom personal jurisdiction clearly does not exist and—more importantly—as to whom [plaintiff's] counsel could readily have ascertained that fact.").

the subpoenas at issue here, the plaintiffs have sued only a single defendant who is connected to an IP address located in the district in which the plaintiffs brought suit, but are seeking in those single defendant cases discovery about other IP addresses belonging to computer users who are not joined as defendants.[9] In the remaining underlying case, the plaintiffs have sued thirty-seven defendants, all of whom are connected to an IP address located in the jurisdiction in which the plaintiffs brought suit, and are seeking discovery only about IP addresses belonging to people joined as defendants.[10] The court will address the subpoenas with respect to each type of case in turn.

I.  Subpoenas Seeking Information about Non-Party IP Addresses: Cases 12 C 1080, 12 C 1083, 12 C 1085, 12 C 1086, and 12 C 1088

The ISPs contend that they "should not be subject to the burden—undue or otherwise—of providing the requested information that ultimately will not even be useful in the Underlying Actions." (Dkt. No. 13, at 6.) The court agrees that the identity of individuals connected with non-party IP addresses is not relevant to the pending claims.

Discovery is appropriate if the information sought is relevant, which means that it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Williams*, 2008 WL 68680, at *3 ("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. . . . (citations omitted)). The plaintiffs attempt to

---

[9] Amended Complaint ¶ 6, *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal. Jan. 5, 2012); Amended Complaint ¶ 6, *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal. Jan. 5, 2012); Amended Complaint ¶ 6, *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va. Jan. 4, 2012); *see also* (Pl.'s Reply 4-5 ("With respect to the [ISPs] joinder arguments, in three of the underlying actions Plaintiff named only a single putative defendant. . . . It is axiomatic to say that a single defendant cannot be misjoined with himself." (citations omitted))).

[10] Complaint ¶ 6, *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16, 2011).

justify the scope of the subpoenas in the single defendant cases by alleging in their complaints the existence of additional IP addresses representing "co-conspirators" who conspired to infringe the plaintiffs' copyright by downloading the same file through the BitTorrent system. The plaintiffs have stated that, after discovery of the identity connected to each IP address, they intend "to seek leave of the Court to amend this complaint to join John Doe's co-conspirators as defendants in this action pursuant to Fed. R. Civ. P. 20(a)(2)."[11] The plaintiffs' contention, in essence, is that identities of the non-parties associated with the IP addresses will be relevant to claims against future defendants who have not yet been sued. By that device, the plaintiffs can avoid all personal jurisdiction and joinder hurdles, and yet obtain the identifying information connected with hundreds of IP addresses located all over the country through a single lawsuit.[12]

To have relevance to the actions currently pending, however, the requested discovery must bear on the civil conspiracy and copyright claims against the current John Doe defendants. In light of the structure of the BitTorrent system, subpoenas seeking the identity of users of non-party IP addresses are not reasonably calculated to lead to the discovery of evidence relevant to the pending claims. BitTorrent users remain anonymous to other BitTorrent users, and have no connection to

---

[11] Amended Complaint ¶ 44, *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal. Jan. 5, 2012); *accord* Amended Complaint ¶ 44, *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal. Jan. 5, 2012) (making an identical statement); Amended Complaint ¶ 43, *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va. Jan. 4, 2012) (same).

[12] Of course, bringing suit against the additional defendants may not be necessary, because the plaintiffs can use the identifying information to leverage a settlement before ever actually suing. *See Digiprotect USA Corp.*, 2011 WL 1466073, at *2 ("The court . . . remains concerned[] that defendants over whom the court has no personal jurisdiction will simply settle with plaintiff rather [than] undertake the time and expense required to assert their rights.").

them beyond the mere fact that they downloaded the same file.[13] It is therefore not a reasonable calculation that the individuals connected to the subpoenaed IP addresses will have any discoverable information related to the current defendants.

Moreover, it appears that the claims of civil conspiracy themselves are unfounded, because the plaintiffs have not pleaded the existence of an agreement among the alleged conspirators. *See Hard Drive Prods., Inc. v. Does 1-55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011) (Darrah, J.) ("Hard Drive's conspiracy claim fails because it has not pled the existence of an agreement among Does 1–55 to commit copyright infringement."). Additionally, based on what has been pleaded, it does not appear plausible that plaintiffs could plead the existence of a conspiracy. Consequently, the court finds that the complaints' allegations of civil conspiracy are only unjustified attempts to bolster the obtaining of irrelevant discovery about non-parties.

It is thus plain that the plaintiffs are not seeking information about the non-party IP addresses for the purpose of litigating their current claims. Instead, the plaintiffs intend to either sue the individuals whose identity they uncover or, more likely, to negotiate a settlement with those individuals. When evaluating relevancy, "a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978). Thus, "when the purpose of a discovery request is to gather information for use in proceedings other

---

[13] It is true that, assuming the BitTorrent users were accessing the network at the same time, they may have downloaded and uploaded pieces of the same file from each other's computers as part of the same swarm. *See MCGIP, LLC*, 2011 WL 3501720, at *1. Nonetheless, a BitTorrent user need not communicate with other users in any other way. *Id.* Indeed, a BitTorrent user will have no information about other users other than their IP addresses, the same information the plaintiffs already possess. *Id.*; *cf. Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011) ("[E]ven if the IP addresses at issue . . . all came from a single swarm, there is no evidence to suggest that each of the addresses 'acted in concert' with all of the others.").

than the pending suit, discovery properly is denied." *Id.* That is precisely the situation here.

The court notes that denying discovery about non-party IP addresses will not leave the plaintiffs without a remedy to uncover the identity of these and other purported copyright infringers. The plaintiffs need merely sue each IP address in the district in which the address is located,[14] and then subpoena the ISPs for identifying information pertaining to that IP address. What the plaintiffs may not do, however, is improperly use court processes[15] by attempting to gain information about hundreds of IP addresses located all over the country in a single action, especially when many of those addresses fall outside of the court's jurisdiction. Accordingly, the motion to compel is denied with respect to the all of the subpoenas in which the plaintiffs are seeking the identity associated with non-party IP addresses.

II.     The Subpoena Seeking Information about a Defendant IP Address: Case 12 C 1057

The remaining subpoena, in *Pacific Century International, Ltd. v. John Does 1-37*, No. 12 C 1057, seeks the identity of only a single Doe defendant from Suddenlink. There are no relevancy concerns related to that subpoena, because the IP address about which the plaintiffs are seeking information is already a defendant. Moreover, the defendant IP address is subject to the personal jurisdiction of the Southern District of Texas, where the suit was brought. *See* Complaint ¶ 6, *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16, 2011).

---

[14] As the parties both indicate, it is possible to uncover the location of any IP address through the use of free online tools, such as http://ip-address-lookup-v4.

[15] In addition to the procedural improprieties outlined above, the plaintiffs' tactics deny the federal courts additional revenue from filing fees in the suits that should be filed to obtain the information the plaintiffs desire. *CP Prods.*, 2011 WL 737761, at *1 ("No predicate has been shown for thus combining 300 separate actions on the cheap—if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.").

The joinder issue is still relevant, however, because the underlying case was brought against thirty-seven Doe defendants. The ISPs cite several BitTorrent copyright cases in this district and elsewhere in which courts have severed all but one defendant after finding joinder of multiple Does improper. None of the cases is on point, however. Most of the cases addressed the joinder issue after one or more of the Doe defendants objected to the subpoena.[16] In the rest, the court severed the defendants when the plaintiff moved for expedited discovery, before any subpoenas had been issued or discovery approved.[17] None of the cases was decided following an objection to a subpoena by an ISP after discovery had already been authorized by the court hearing the underlying case.

The court recognizes the burden on ISPs caused by such subpoenas when joinder is potentially improper, particularly in cases in which the plaintiff seeks the identity of hundreds of Doe defendants. Even though any one subpoena may impose a relatively modest burden, over time the burden on the ISPs of multiple subpoenas may be substantial. *See* Decl. of Charles E. Piehl & Ex. A, *AF Holdings, LLC, v. Does 1-135*, No. 11 C 3336 (N.D. Cal. Feb. 22, 2012), ECF Nos. 43, 43-1 (noting that the plaintiffs' lawyers have subpoenaed information relating to 15,000 IP addresses in the last year and a half). Moreover, it is difficult for the ISPs to object before the approval of early

---

[16] *See* Written Opinion, *Millennium TGA, Inc. v. Does 1-100*, No. 10 C 5603 (N.D. Ill. Mar. 31, 2011) (Manning, J.); Minute Entry, *Future Blue, Inc. v. Does 1-300*, No. 10 C 6256 (N.D. Ill. June 8, 2011) (Conlon, J.); Written Opinion, *Lightspeed Media Corp. v. Does 1–100*, No. 10 C 5604 (N.D. Ill. Mar. 31, 2011) (Manning, J.); *see also Hard Drive Prods.*, 809 F. Supp. 2d at 1157; *LaFace Records, LLC v. Does 1-38*, No. 07 C 297, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008).

[17] *Hard Drive Prods., Inc. v. Does 1-130*, No. 11 C 3826, 2011 U.S. Dist. LEXIS 132449 (N.D. Cal. Nov. 16, 2011); *Digital Sin, Inc. v. Doe*, No. 11 C 4397, 2011 U.S. Dist. LEXIS 128033 (N.D. Cal. Nov. 4, 2011); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 669 (S.D. Fla. 2011); Order, *Boy Racer, Inc. v. Does 2-52*, No. 11-2834 (N.D. Cal.); *Pac. Century Int'l Ltd. v. Does 1-101*, No. 11 C 2533, 2011 WL 2690142 (N.D. Cal. July 8, 2011); *Diabolic Video Prods., Inc. v. Does 1-2099*, 2011 WL 3100404 (N.D. Cal. May 31, 2011); *Millennium TGA, Inc. v. Doe*, No. 11 C 2258, 2011 WL 1812786 (N.D. Cal. May 12, 2011).

discovery, given that they likely will not learn of such cases until they are served with a subpoena.

Nonetheless, the court will grant the motion to compel in Case 12 C 1057 for three reasons. First, this court is hesitant to make a ruling that could be interpreted as contrary to the earlier ruling of the Southern District of Texas, which approved early discovery, including the issuance of a subpoena to Suddenlink, despite the potential joinder issues. (Dkt. No. 2, Ex. B.) Second, the subpoena requires Suddenlink to contact the individual associated with the IP address and provide him or her an opportunity to object to the subpoena. (*Id.*) Accordingly, the Doe defendant will have the opportunity to object on the ground of improper joinder before his or her identity is provided in response to the subpoena. Third, the subpoena seeks the identity of only a single IP address out of the thirty-seven joined as defendants. In that situation, the burden on Suddenlink appears minimal, as compared to a situation in which the subpoena seeks information about many IP addresses.

The ISPs also raise one additional issue with respect to the subpoena in Case 12 C 1057. The ISPs contend that the subpoena should be quashed because the plaintiff in Case 12 C 1057 has not stated a prima facie case of copyright infringement. Under the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Here, the plaintiff alleges that it has submitted a registration application, but the application has not yet been approved by the U.S. Copyright Office. *See* Complaint ¶ 25, *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16, 2011).

Circuits are split over whether submitting an application satisfies § 411(a), even in the absence of approval of the application. *See Brooks-Ngwenya v. Indianapolis Pub. Schs.*, 564 F.3d 804, 806 (7th Cir. 2009). In the Fifth Circuit, where the underlying complaint was filed, merely

filing an application is sufficient. *See Apple Barrel Prods., Inc. v. R.D. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984); *see also Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003) ("[A]n application for registration must be filed before the copyright can be sued upon."). Applying the application approach, the plaintiff has sufficiently pleaded a claim of copyright infringement to support enforcement of the subpoena.

Accordingly, the court will grant the motion to compel in Case 12 C 1057 only. Suddenlink will have 70 days to comply with the subpoena from the date of this order, giving it time to comply with its obligation to notify the subscriber whose identity was subpoenaed and to give him or her an opportunity to object. (Dkt. No. 2, Ex. B.)

III.     Motion to Consolidate Two Additional Cases

Finally, Comcast has filed a motion to consolidate two additional cases with this case (Dkt. No. 18 (seeking consolidation of *Pacific Century International, Ltd. v. Does 1-25*, No. 12 C 1535 (N.D. Ill) and *Hard Drive Productions, Inc. v. Does 1-54*, No. 12 C 1532 (N.D. Ill).) Both of those cases originated in this district. Moreover, the court in both cases has granted the plaintiffs leave to serve early discovery on the ISPs to obtain identifying information of IP addresses. No motion to quash or motion to compel has yet been filed in either of the cases, however, so the motion to consolidate is denied at this time. Should a motion to compel or a motion to quash be filed in those cases, the court will entertain a motion to consolidate that motion only before this court, while leaving the underlying actions assigned to the judges to whom they are currently assigned.

CONCLUSION

For the reasons listed above, the plaintiffs' motion to compel is granted in part and denied in part. (Dkt. No. 12). The subpoenas in Cases 12 C 1080, 12 C 1083, 12 C 1085, 12 C 1086, and

12 C 1088 are quashed. Suddenlink shall comply with the subpoena in Case 12 C 1057 within 70 days of the date of this order. Comcast's motion to consolidate (Dkt. No. 18) is denied without prejudice.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 30, 2012